JOHN A. LUTHER v. STATE OF NEBRASKA.

FILED FEBRUARY 20, 1909. No. 15,188.

1. **Intoxicating Liquors:** ILLEGAL SALES. The prohibition by sections 11 and 20, ch. 50, Comp. St. 1907, of the sale or keeping for the purpose of sale of malt liquors without a license so to do applies to all malt liquors sold or kept for sale to be used as a beverage, whether intoxicating or not.

2. ———: ———: EVIDENCE. In a criminal prosecution for the violation of such sections, or either of them, where the charge is of selling or keeping for the purpose of sale any "malt," "spirituous," or "vinous" liquors, and the proof shows that any of said prohibited liquors was sold or kept for sale, the state is not required to allege or prove that the liquors sold or kept for the purpose of sale are in fact intoxicating. It is sufficient to allege and prove the sale or the keeping for the purpose of sale of any of the prohibited liquors in violation of the terms of said sections.

3. **Criminal Law:** INSTRUCTIONS: HARMLESS ERROR. The information alleged in appropriate counts that the accused kept for sale and sold "a certain malt and intoxicating liquor, to wit, malt tonic." The evidence showed that upon analysis the liquor was a malt liquor, containing one and one-tenth per cent. of alcohol, and that it belonged to the "class of beers." The trial court submitted to

the jury the question of the intoxicating properties of the liquor by permitting the accused to call witnesses accustomed in some degree to the use of intoxicants, who testified that they had partaken of the beverage, and that it had no intoxicating effect upon them and was not intoxicating. The state called a witness, who testified that he had purchased and used the drink, and that it had the same effect upon him as produced by drinking beer, but to a less degree. The court instructed the jury, in substance, that in order to convict the accused they must find him guilty of selling or keeping for the purpose of sale the "liquors as charged and described in the information." *Held*, First, that this submitted to the jury the question of the intoxicating properties of the liquor; second, that the action of the court in submitting the question of the intoxicating properties of the liquor was erroneous, but without prejudice, as it was upon the procurement of the accused.

REHEARING of case reported in 80 Neb. 432. *Judgment of district court affirmed.*

REESE, C. J.

This case was decided at the September term, 1907, of this court, and the opinion is reported in 80 Neb. 432. The attorney general filed a motion for rehearing, which was sustained, and the case has been submitted to the court upon carefully prepared briefs and able oral arguments by counsel. The contention of the attorney general is: First, that the proof upon the trial was conclusive that the liquor sold and kept for sale was "malt liquors," and therefore the selling and keeping for sale of the liquors described was a violation of law, and the conviction should be sustained without any inquiry as to the intoxicating or nonintoxicating properties of the liquor; second, that, should the court hold otherwise, the question of the intoxicating quality of the liquor kept for sale and sold was sufficiently submitted to the jury, and that in that event the judgment should be affirmed. It is contended by plaintiff in error: "First, it is not a violation of our liquor law to sell a malt extract, unless the same is shown to be of such an intoxicating character that it may be used as a beverage, and that when used in practicable

quantities it will produce intoxication; second, that the court will not take judicial notice that malt extract is an intoxicating liquor, but that this question is one of fact to be submitted to the jury; third, that the instructions requested by the defendant should have been given, and that the court erred in omitting from the instructions given the element of the intoxicating character of malt extract as one of the material issues to be tried."

It is charged in the first count of the information that plaintiff in error unlawfully kept for the purpose of sale "certain malt and intoxicating liquor, to wit, malt tonic," with intent to sell the same; and in the second count that he unlawfully sold to a person named "certain malt and intoxicating liquor, to wit, malt tonic"; and in the third count that he sold of said liquor to another person; and in the fourth count that he sold the same to a person named; and in the fifth count that he sold the same to yet another person named. The jury returned a verdict finding plaintiff in error guilty on all the counts of the information. The court imposed a fine of $100 upon each count.

It was shown upon the trial that upon the filing of the complaint before the magistrate a search warrant was issued, and the sheriff in making a search of the premises of plaintiff in error found "four full barrels and about a half barrel" of the liquor. There was ample proof that the liquor was kept for sale and sold to be drunk as a beverage, and that a considerable quantity of it had been sold and consumed. The liquor was in bottles, each bottle bearing an illuminated label as follows, omitting names and locality of the brewing company: "——— Brewing Company's NON INTOX. A nonintoxicating malt tonic. Guaranteed to contain less than 2% of alcohol. Brewed and bottled by the ——— Brewing Co., ———, Illinois. Western Branch, ———, Mo." The state chemist was called as a witness on the part of the state, and testified that samples of the liquor had been sent to and analyzed by him, and that the liquor was malt liquor; that all liquors that were brewed from malt were necessarily malt

liquors; and that the liquor contained in the bottles is classed "in the class of beers"; that the quantity of alcohol contained in the liquor was one and one-tenth per cent.; that the quantity of alcohol usually contained in the lager beer of commerce is on average "around 3 per cent." There is no controversy as to the possession and sale of the liquors by plaintiff in error, nor that they were sold and to be sold to be drunk as a beverage. The only contentions are as outlined above. There was no effort to contradict the testimony of the state chemist to the effect that the liquor was a malt liquor, that it contained the percentage of alcohol named, and that it is classed as and among "the class of beers."

It is contended by the state that under our statutes it was not essential that the prosecution should go farther with its proof; that if the liquor was a "malt liquor" and belonged to the class known as beer, the statute having prohibited the sale of "malt liquor," and this court having so often decided that the courts will take judicial notice that beer is an intoxicant, the verdict was right and should be sustained. Chapter 50, Comp. St. 1907, commonly known as the "Slocumb Law," provides in the first section that licenses may be issued for the sale of "malt, spirituous and vinous liquors." In section 6 the issuance of a license to sell "malt, spirituous and vinous liquors" is prohibited, unless the applicant gives the bond required by the section. Section 10 prohibits any licensed person from selling intoxicating liquors to the classes of persons named therein. Section 11 provides that "all persons who shall sell, or give away, upon any pretext, malt, spirituous, or vinous liquors, or any intoxicating drinks," without having first complied with the provisions of the act, and obtained a license, shall be deemed guilty of a misdemeanor and punished as prescribed in the section. Section 13 makes it a crime for any licensed person to sell or give away, either by himself or another in his employ, any "malt, spirituous, or vinous liquors," which shall be adulterated. Section 14 makes it a crime to sell or give away

"any malt, spirituous and vinous liquors on the day of any general or special election, or at any time during the first day of the week, commonly called Sunday." Section 20 renders it unlawful for any person to keep for the purpose of sale without license "any malt, spirituous, or vinous liquors," and "any person or persons who shall be found in possession of any intoxicating liquors in this state, with the intention of disposing of the same without license," shall be deemed guilty of a misdemeanor. Section 25 confers upon the corporate authorities of cities and villages the power to license, regulate and prohibit "the selling or giving away of any intoxicating, malt, spirituous and vinous, mixed or fermented liquors within the limits of such city or village." . Section 29 renders it "the duty of all vendors of malt, spirituous, or vinous liquors" to keep the windows and doors of their places of business unobstructed.

We have thus quoted from the different sections of the law for the purpose of seeking light upon the legislative intent in the passage of the act under consideration. It is contended by counsel for plaintiff in error that it was the legislative intent to suppress the sale of intoxicating liquors, and that, although the term "malt liquors" is used .in the act, yet it was not the purpose to prevent the sale of malt liquors or liquids, unless they contained a sufficient quantity of alcohol to produce intoxication; or, stated differently, that the language used in sections 11 and 20 must be construed to mean as if it read "intoxicating malt liquor." I cannot read the statute in that light. As well might we apply the adjective to the words "spirituous" and "vinous." It is my opinion that the legislature realized and appreciated the fact that malt, spirituous and vinous liquors are equally largely used as a beverage, and are alike injurious to the consumer, if not by producing immediate intoxication when taken in small quantities, by producing the same effect when more is taken, and at the same time creating an abnormal appetite which leads to dissipation and inebriety. At any rate, the law pro-

hibits the sale of "malt liquors" without a license, and we must obey its plain mandate. Alcoholic beverages are under the ban of the law in some form or other in most civilized countries. They are known to be the cause of crime, destitution and pauperism. Malt liquors used as beverages are known to contain that destructive ingredient. It was proved upon the trial of this case that the beverage kept and sold by plaintiff in error contained it. The liquor sold by him was simply an effort to evade the law. The title of the act is "An act to regulate the license and sale of malt, spirituous, and vinous liquors," etc. The whole act is built upon that title. Malt liquors are as much within both the letter and spirit of the law as either of the other classes named. To say that the legislature intended to provide for the regulation and license of *intoxicating* malt liquors would require the same word to be used as defining the other classes, and would be legislating and reading into the statute a word which the legislature clearly intended should not be there. This is not the province of the courts. We are sustained in this view by many adjudicated cases, some of which we cite, without quoting: *Kerkow v. Bauer,* 15 Neb. 150; *Sothman v. State,* 66 Neb. 302; *Peterson v. State,* 63 Neb. 251; *State v. Teissedre,* 30 Kan. 476; *Stout v. State,* 96 Ind. 407; *Briffitt v. State,* 58 Wis. 39; *Commonwealth v. Timothy,* 8 Gray (Mass.) 480; *Commonwealth v. Anthes,* 12 Gray (Mass.) 29; *Eaves v. State,* 113 Ga. 749; *State v. Gill,* 89 Minn. 502; *Commonwealth v. Dean,* 14 Gray (Mass.) 99; *State v. Jenkins,* 64 N. H. 375; *Hatfield v. Commonwealth,* 120 Pa. St. 395; *Commonwealth v. Reyburg,* 122 Pa. St. 299; *Kettering v. City of Jacksonville,* 50 Ill. 39; *State v. Yager,* 72 Ia. 421; *State v. O'Connell,* 99 Me. 61; *State v. Intoxicating Liquors,* 76 Ia. 243. "But if the statute specifically forbids the unlicensed sale of 'malt liquor,' the question of the intoxicating properties of the liquor sold is immaterial; it is only necessary to determine whether it was a malt liquor." 23 Cyc. 60. "Any liquor which is named or plainly included in the statute must be held intoxicating

as a matter of law, without inquiry into its actual prop-
erties, and even though, as a matter of fact, it is not
capable of producing intoxication." 23 Cyc. 57.

It is claimed that the words "malt, spirituous, or vinous
liquors" and "intoxicating drinks," as used in section 11,
and "intoxicating liquors," as used in section 20, are
used interchangeably, and all mean the same. To this we
cannot agree. As we have seen, the statute prohibits the
sale of either "malt," "spirituous," or "vinous" liquors in
specific terms by name. As said in many of the cases
above cited, this is a specific and direct prohibition, but
the legislature, recognizing the fact that there are other
intoxicants which do not come strictly within the classes
named, the words "or any intoxicating drinks," as in sec-
tion 11, and "any intoxicating liquors," as in section 20,
were used to cover all kinds not within the classes named;
that, if the charge and proof are that any one of the classes
were sold or kept for sale, no proof of the intoxicating
property of the liquor was necessary, and that it is only
necessary to prove that the liquor sold or kept for sale is
one of the classes forbidden. But, should the accusation
refer to any other kind of liquor, it should be alleged and
proved that the article was intoxicating. This, I think,
is the correct interpretation of the statute and without
further inquiry the judgment of the district court should
be affirmed.

However, there is another feature of this case upon
which we all agree, and that is, whether correctly or in-
correctly, the district court did submit the question of the
intoxicating quality of the liquor to the jury, and that by
their verdict the jury answered the question. The aver-
ments of the information are that, at the time and place
named in the several counts, plaintiff in error kept for
sale and sold "certain malt and intoxicating liquor, to wit,
'malt tonic,' " etc. The same language, descriptive of the
article sold or kept for sale, is used in each of the five
counts in the information. The widest latitude was al-
lowed plaintiff in error in his efforts to prove that the

drinks sold and kept for sale were not intoxicating. A number of witnesses who had partaken of the beverage were called, and testified to the fact of drinking the same, and that no intoxicating effect was felt by them, and that the drink was not intoxicating. One witness who was called by the state testified that he drank of the liquor, and it had the same effect upon him as beer, but in a less degree. The state chemist testified that the intoxicating ingredient was alcohol, and the effect depended upon the individual drinking the liquor, and the lower grade or per cent. of alcohol would produce intoxication in a person who was not accustomed to drinking, while a higher grade would be necessary to intoxicate the individual who was in the habit of drinking the stronger liquors.

The court instructed the jury that the material allegations which the state must prove were that the plaintiff in error kept or sold liquors "as charged in the information"; that in order to convict it was necessary that the proof show that plaintiff in error had the liquors "described in the information" and sold the same. It is not deemed necessary to further refer to the instructions. It is sufficient to say that the instructions, while not as explicit as they might have been, had any upon that point been necessary, yet, when taken in connection with the evidence, were sufficient to submit the question of the intoxicating properties of the liquor to the jury. We are of the opinion, however, that the question was improperly submitted, and that no evidence should have been received upon that subject. The error, however, having been by the procurement of plaintiff in error, and in no sense to his prejudice, he cannot complain.

The judgment of the district court is

AFFIRMED.

ROSE, J., not sitting.

LETTON, J., dissenting.

I cannot agree to the main holding in the opinion. It seems to hold that the selling of all malt liquids or

Luther v. State.

liquors, regardless of whether they contain intoxicating properties, is prohibited. I think that a holding that the sale of malt beverages nonintoxicating in character is a crime, unless a license has first been obtained under the provisions of the liquor law, is an entirely new doctrine in this state, and gives to the law such a new and radically changed interpretation from that which has been followed by administrative, executive and judicial officers of the government for nearly 40 years as to partake of the character of judicial legislation. I venture to say that it has been the uniform practice of public prosecutors in liquor cases ever since the law was enacted to prove, or endeavor to prove, the intoxicating quality of malt beverages, other than beer, ale or such liquors that are of such well-known ingredients and qualities that the court will take judicial notice that they are within the prohibition of the statute. When the legislature prohibited the sale of malt, spirituous or vinous liquors, I think the word "liquors" was used in the ordinary acceptation of the term. The Century Dictionary defines liquor: (1) A liquid or fluid substance, as water, milk, blood, sap, etc. (2) A strong or active liquid of any sort. Specifically—(a) An alcoholic or spirituous liquor, either distilled or fermented; an intoxicating beverage; especially, a spirituous or distilled drink, as distinguished from fermented beverages, as wine and beer. (b) A strong solution of a particular substance, used in the industrial arts. Webster: (1) Any liquid substance, as water, milk, blood, sap, juice, or the like. (2) Especially, alcoholic or spirituous fluid, either distilled or fermented. A decoction, solution or tincture.

There are many tonic preparations of malt combined with ingredients, such as iron, phosphates or other drugs, and other and nourishing preparations of malt combined with ingredients of food value for the use of convalescents, which are in constant use by the medical profession, and which are sold in drug stores. This opinion, construed strictly, would drive all this class of preparations from

the market, which I think was never intended by the legislature. The object of the law was to regulate the sale of malt "liquors," not malt *liquids*. An examination of the liquor laws of this state as a whole confirms me in the belief that this is the reasonable and proper construction of the statute. The phraseology used in describing the liquors varies with the various sections of the liquor law. Comp. St. 1907, ch. 50. In the first section the county board is authorized to license the sale of "malt, spirituous and vinous liquors." The word "intoxicating" does not appear in this section. Section 5 speaks of the thing to be licensed as "the liquor." It uses no other qualifying words. The form of the license prescribed by this section names "malt, spirituous and vinous liquors," but does not contain the word "intoxicating." The sixth section says that no person shall be licensed to sell "malt, spirituous and vinous liquors" by the county board, etc., unless a bond is given, and provides that a bond shall be given for the benefit of any one who may be injured by the sale of "any intoxicating liquor." No one could recover damages under bond for sale of liquors unless they were intoxicating liquors. Section 8 prohibits the sale to any minor, apprentice, or servant, under 21 years of age of any "malt, spirituous and vinous liquors, or any intoxicating drinks." Section 10 prohibits the sale of "any intoxicating liquors to any Indian, insane person, or idiot, or habitual drunkard." Section 15 provides that the person licensed shall pay damages that result in consequence of "such traffic," and the expenses of all civil and criminal prosecutions growing out of, or justly attributed to, this traffic in intoxicating drinks, so that the words "such traffic" relate to the traffic forbidden in the chapter, and this section construes it to be traffic in intoxicating drinks. Section 16 gives an action to a married woman for damages on account of "such traffic," which we have seen by section 15 is characterized as being traffic in intoxicating drinks, and section 17 gives an action by the county or city on

the bond of the person licensed, when a person shall become a county or city charge by reason of intemperance, against "any person licensed under this act, who may have been in the habit of selling or giving intoxicating liquors" to such persons, and in the proviso to this section any person against whom a judgment shall be rendered under the provisions of the section may recover from any other person who has "sold or given liquor to such person becoming a public charge." Section 18 provides that, in the trial of suits the cause or foundation of which shall be the acts done or injuries inflicted by a person "under the influence of liquor," it only shall be necessary to sustain the action to prove that the defendant sold or gave liquor to the person so intoxicated. Plainly the word "liquor" here, as in all places in the statute, should be read "intoxicating liquor." In the last part of section 18 the words "intoxicating drinks" are used as an exact equivalent of the word "liquor" where it twice occurs in the same section. Section 20 prohibits the keeping of any "malt, spirituous, or vinous liquors" for the purpose of selling without license, and it provides that any one who is found in possession of "intoxicating" liquors with intention of disposing of the same without license shall be deemed guilty.

Unless we consider that the liquors kept for sale must be intoxicating liquors in order to make the act of keeping them unlawful, we must presume that the legislature would forbid the keeping of inoffensive liquors, and in the same section provide that the person who was found keeping intoxicating liquors should be punished, without providing that the person keeping the other forbidden liquors should be punished; in other words, that the legislature would prohibit the keeping of liquors, but provide no punishment therefor, and then provide punishment for keeping intoxicating liquors which it had not specifically prohibited. In this same section the word "liquor" is used seven or eight times without any quali-

33

fying word, and twice used qualified by the word intoxi-
cating, and so, as in other places in the statute, the word
"liquor" is used as, meaning "intoxicating liquor." In
section 21 the word "liquors" is used five times without
any qualifying word, and in section 22 at least five times.
In section 24 a permit is authorized to druggists to sell
"liquors" without any qualifying word, but I think it
clear that "intoxicating liquors" is meant. It is also pro-
vided further that no license shall be granted by a vil-
lage for the sale of any "liquor" within $2\frac{1}{2}$ miles of a mili-
tary post. By section 26 druggists who have permits are
required to keep a register of "all liquors sold or given
away by him." This is not limited to malt, spirituous
and vinous liquors, and the word "intoxicating" is not
used. If the word "liquors" is to be construed in this sec-
tion as it is in the opinion, the report required of a drug-
gist is much greater than anybody ever supposed, and all
medicinal preparations of malt would have to be reported.
Section 30$a$, ch. 50, Comp. St., being a part of the act of
1907, speaks of the liquor license authorized under the
liquor law as a license for the sale of "intoxicating
liquors," and the next section of the same act (30$b$) says
that it shall be unlawful for any person engaged in the
manufacture of malt, spirituous, or vinous liquors to aid
or assist in procuring a license for any person for the
sale at retail of malt, spirituous or vinous liquors, and
then speaks of these liquors so defined as "said intoxi-
cating liquors," thereby expressly stating that the malt,
spirituous and vinous liquors named in the liquor law are
intoxicating liquors, and in section 30$g$ of the same act
it speaks of all of the other acts as "acts relating to in-
toxicating liquors." The act against treating forbids the
giving away of any intoxicating drink. The first section
of the act of 1907 (Comp. St. ch. 50, sec. 39), regulating
the transportation of intoxicating liquors, makes it un-
lawful to consign intoxicating liquors from one point in
the state to another. If the sale of malt liquors not in-
toxicating is forbidden by the statute, that should have

been included in this provision, and the fourth section of the same act (Comp. St., ch. 50, sec. 42) forbids the bringing of any malt, spirituous, vinous or intoxicating liquors into any city or incorporated village in which a license has not been granted, etc.   It is manifest that the word "liquors" is used in this act also with the meaning of "intoxicating liquors," and that a malt preparation that is not intoxicating would not be included in the meaning given to the word "liquors."   If this case had been presented nearly 50 years ago, as it might have been, since the main provisions of the statute were enacted in 1858 (see *Rohrer v. Hastings Brewing Co., ante*, p. 111), a holding that the sale of any malt liquor was prohibited unless the seller was licensed might perhaps have been justified, though this is questionable; but, after half a century of liquor legislation and official construction, it seems to me too late to take this view, and I am firmly of the opinion that the change, if made at all should be made by the legislature.

Cases from other states throw but little light upon the question, since in order to reach the true meaning of each opinion the whole statute must be considered and compared with the statute in this state.   But the courts of other states are not in harmony, the holding of the different states depending upon the interpretation and construction of the respective statutes.   In Pennsylvania, Illinois and Maine the cases cited by Judge REESE hold specifically that proof of the intoxicating quality of malt liquor is unnecessary.   In Minnesota it seems to be held that a charge of selling malt *liquor* implies that the liquor has intoxicating qualities.   It is said in *State v. Gill*, 89. Minn. 502, cited in the majority opinion, that whether or not the liquor was really intoxicating is a question of fact for the jury,   See, also, *State v. Story*, 87 Minn. 5. If I understand the Minnesota holdings correctly, they are exactly in line with what is and has heretofore been considered to be the law in this state, and are not in harmony with the majority opinion here; and I think the

cases cited from other states do not all support the opinion. The Massachusetts case cited in the opinion merely holds that, where a statute declares that lager beer shall be deemed intoxicating, it cannot be proved not to be intoxicating in a prosecution for selling intoxicating liquors. The Kansas and Wisconsin cases merely hold, as does this court, that the courts will take judicial notice that beer is a malt liquor and intoxicating.

Further, the defendant was charged with selling "a malt and intoxicating liquor, to wit, malt tonic." To charge a sale of intoxicating malt liquor and prove nonintoxicating would be, I think, a fatal variance between the pleadings and the proof. The defendant requested instructions which are set out in the original opinion, 80 Neb. 432, that the state must prove that the malt tonic was intoxicating. Each side introduced testimony concerning the intoxicating character of the liquor in controversy, so that the state concluded that the intoxicating quality of the liquor was a material allegation necessary to be proved to entitle it to a conviction. The trial court therefore erred in refusing to give instructions 1 and 2 requested by the defendant. Perhaps inferentially the jury might conclude from the ninth instruction given by the court that "malt liquor" referred to intoxicating liquor, but it did not supply the instructions asked by defendant.

Under the charge, it was error to refuse these instructions, and the original judgment should be adhered to.

BARNES, J., concurs in this dissent.