.Statement of the Case.
MONROE, J.
The city of Shreveport ruled defendant to show cause why he should not pay a license for selling “near beer,” or discontinue the business, alleging that, under a city ordinance, he was liable for a minimum license of $200, and, under section 20 of Act No. 171 of 1898, it was entitled to proceed against him by rule. Defendant interposed an exception of “no cause of action,” and, answering, admitted that he was engaged in selling a nonintoxicating nonspirituous malt beverage, known as “hiawatha,” for the sale of which, he alleges, the city has no authority to impose a license tax, for the reason, that the state has imposed no such tax, and, under the Constitution, the city can impose no tax upon such business in excess of that imposed by the state. He further alleges that the ordinance relied on is illegal, in that it purports to impose a penalty which the city is without authority to impose; but, as the ordinance imposes no penalty, that ground was abandoned in the district court. The judge a quo in an able and exhaustive opinion sustained the defense first above mentioned, and the city has appealed.
Opinion.
[2] The ordinance here called in question purports to fix the license for the “business of selling nonintoxicating, malt liquor, known as near beer, hiawatha, or any other name that may be used to designate it.” It was admitted that the member of the city council by whom it was introduced would testify that the purpose was to aid in enforcing the prohibition ordinances and laws, rather than to provide a revenue, and that the business of selling nonintoxicating malt liquor is being used as a cover for the sale of intoxicating malt liquor.
Article 229 of the Constitution contains the provision:
“No political corporation shall impose a greater license tax than is imposed by the General Assembly for state purposes. This restriction shall not apply to dealers in distilled, alcoholic, or malt liquors.” ,
It is not contended that a political corporation can impose a license tax where the state has imposed none, save in the eases specially excepted, but it is said that by the provision thus quoted there are excepted two classes of cases, to wit, the ease of the dealer in distilled and alcoholic liquors, including malt liquors that are intoxicating, and the case of the dealer in malt liquor that is not intoxicating. The question, then, is, What did the framers of the Constitution mean by the, use of the words, “malt liquors,” in the connection in which they used them] The three words, “distilled,” “alcoholic,” and ■ “malt” are used as adjectives, qualifying the noun, “liquors,” and the lexicographers give *129 us the following information concerning their meaning when so used:
• ‘'Distilled * * * liquors, ordinarily alcoholic liquors, obtained by distillation,” etc.
* * * * * * *
“Alcoholic. Of or pertaining to alcohol, or partaking of its dualities.
❖ * * * * * *
“Alcohol. * * * One of the products of yinous fermentation and contained in wine (hence called spirit of wine), beer, whisky and the other fermented and distilled liquors, of which it is the intoxicating principle.”
* * * * * * “Intoxicating. * * * Some of the courts include under this term all liquors that are shown to produce intoxication; and all courts take judicial notice of the nature of the ordinary intoxicating liquors, such as brandy, whisky, wine, beer, gin,” etc.
❖ ❖ * % * * #
“Malt liquor; beer — slang or colloq.”
“Malt liquor (in minor col.). A fermented liquor, as beer made with malt.”
Webster’s New.Int. Die. (1911). “Intoxicating Liquors — (i) In General. In the absence of a statutory definition, this term is understood to include any liquor intend.ed for use as a beverage or capable of being so used which contains such a proportion of alcohol that it will produce intoxication, when imbibed in such quantities as it is practically possible for a man to drink.”
* ‡ sfc * * % ❖
. “Liquor or Liquors. Either of these terms, standing alone, is too wide to have a precise legal signification, unless explained by the context or by necessary inferences from the subject matter of the statute. When thus ex-' plained, however, the terms are commonly understood as including all varieties of intoxicating beverages, whether spirituous, vinous or malt.” 23 Cyc. pp. 57, 61.
“Malt Liquors. This term, in its common and popular ' usage, includes such liquors as beer, ale, porter and stout, and is clearly inapplicable to wines and cider.”
23 Cyc. pp. 57, 60, 61.
“Liquor. A liquid or fluid substance, as water, milk, blood, sap. * * * (2) A strong or-active liquid of any sort. Specifically — (a) An alcoholic or spirituous liquid, either distilled or fermented.;- especially, a spirituous or distilled drink as distinguished from fermented beverages, as wine or beer.”
“Malt. * * * (2a) Pertaining to, or con-
taining, or made with malt, — malt liquor, a general term for an alcoholic beverage, produced by the fermentation of malt, as opposed to those obtained by the distillation of malt or mash.” Century Die.
The last definition, above quoted from Cye., goes -on to say that the courts decline to take judicial notice of all the' varieties of malt liquor, or to rule judicially that all- malt liquors are intoxicating, unless it is so declared by statute; that question being left to the juries in particular cases. And it is further said that;
“If the statute specifically forbids the unlicensed sale of malt liquors, the question of the intoxicating properties of the liquor sold is immaterial. It is only necessary to determine whether it was a malt liquor” — citing Eaves v. State, 113 Ga. 749, 39 S. E. 318, and State v. O’Connell, 99 Me. 61, 58 Atl. 59.
That there are malt liquors which are not intoxicating is undisputed, and is admitted in this ease, and it is also beyond dispute that there are such liquors which are not intended to be, and are not capable.of being, used as beverages. And this latter proposition is equally true of distilled and alcoholic liquors, naptha and attar of rose being distilled liquors (in the broadest sense of the word liquors); and a large proportion of the preparations enumerated in the pharmacopsea being alcoholic liquors in the sense that alcohol is an important ingredient, but in the one case the liquors, though distilled, are not intoxicating, and in neither ease are the liquors intended to be, or capable of being, used as beverages.
[1] On the other hand, it is plain from the foregoing citations that, where from the subject-matter to which they are applied or the context it appears that the words, “distilled, alcoholic or malt liquors,” are used with reference to the evil of intemperate drinking, their usual and popular meaning is distilled, alcoholic or malt liquors that are, or may be, used as beverages, and, when so' used, are capable of producing intoxication. The question in this ease, therefore, is not in how many senses the words mentioned might have been used, but in what.sense, or senses, were they used? And, in order to answer that question correctly, we must attribute to them *131 tlieir ordinary, and not an unusual, and perhaps unheard of, meaning.
“The words and terms of a constitution, like those of a statute, are to he interpreted and understood in their most natural and obvious meaning, unless the subject indicates, or. the text suggests, that they have been used in a technical sense. The presumption is in favor of the natural and popular meaning in which the words are usually understood by the people who have adopted them.” 8 Cyc. p. 734. “The words and terms of a constitutional article, like those of a law, are to be understood in their most usual signification; and, in order to ascertain the true meaning of a statute, the reason and spirit of it should be considered, and also the cause which superinduced its enactment.” Shreveport Gas, etc., Co. v. Assessor, 47 La. Ann. 65, 16 South. 650.
When, in 1898, the present Constitution was adopted, it is safe to say that but few persons in this state had ever heard the term, “near beer,” or had ever heard of “hiawatha” (spelled with a small “h,” and applied to a beverage), and we think it equally safe to say that there were none who, reading the language which we are now endeavoring to interpret, and, finding the words, “distilled alcoholic or malt liquors” used together for the obvious purposes of vesting in the local authorities a wider control in matters affecting intemperate drinking than in other matters, would not unhesitatingly have concluded that each of those words was intended to apply to intoxicating beverages, and not to nonintoxicants.
The framers of the Constitution knew that the traffic in intoxicating liquor is fraught with evil, but they did not know, and could not anticipate, that the traffic in one nonintoxicant (and one of which they had probably never heard) would any more than the traffic in another serve as a cover for the traffic in intoxicants. We are, therefore, of opinion that in framing the provision relied on by plaintiff the intention was that it should apply to distilled, alcoholic, and malt liquors which are, or may be, used as beverages, and which are intoxicating, and that it was not intended to apply to malt liquors, or any other liquors, which are not so used and are not intoxicating.
In the case of State v. Maroun, 128 La. 829, 55 South. 472, this court had occasion to interpret the act No. 4 of 1910 (extra session), which provides that, in prohibition territory:
“The term ‘grog’ or ‘tippling shop,’ as used in the statutes * * * is hereby declared to mean any shop or place where intoxicating, spirituous, vinous, or malt liquors are sold or served at retail by any person, association or corporation, who charges for said liquors or for service thereof, or charges for providing lockers or other places for conveniently handling or using said liquors, or for icing said liquors, or shall make any charge of whatever nature for the handling, keeping, serving or furnishing accommodations for persons using or drinking said liquors,” etc.
And it was held that the act must be “construed as including only malt liquors that are intoxicating.” The learned counsel for plaintiff think that the conclusion thus reached does not establish a precedent which can be applied in the case at bar. We are much inclined to think that it does, but will not lengthen this opinion by attempting to reason the matter out. It is quite certain that there is no conflict between the views which were there expressed and those upon which we predicate the conclusion reached in the instant case.
For the reasons thus assigned, the judgment appealed from is affirmed, at the cost of the appellant.