# CASES

## DECIDED IN THE

# SUPREME COURT OF GEORGIA

### AT THE

## OCTOBER TERM, 1914

---

### HOWARD et al. v. ACME BREWING COMPANY.

A manufacturing plant where only non-intoxicating malt liquor is made and sold is not a nuisance which may be abated under the "blind tiger" statute (Civil Code of 1910, § 5335), which declares that "any, place commonly known as a blind tiger, where spirituous, malt, or intoxicating liquors are sold in violation of law, shall be deemed a nuisance, and the same may be abated or enjoined as such," etc.

DECEMBER 16, 1914. REHEARING DENIED JANUARY 18, 1915.

Petition for injunction. Before Judge Mathews. Bibb superior court. March 7, 1914.

R. D. Feagin, for plaintiffs. W. D. McNeil, L. Z. Rosser, Morris Brandon, and B. Z. Phillips, for defendant.

EVANS, P. J. The defendant is a corporation owning and operating a brewery for the manufacture and sale of malt liquors. Certain citizens of Bibb county filed a petition in the superior court, by virtue of what is known as the "blind-tiger act," to abate the brewery as a nuisance. The statute upon which the proceeding was based is as follows: "Any place commonly known as a 'blind tiger,' where spirituous, malt, or intoxicating liquors are sold in violation of law, shall be deemed a nuisance, and the same may be abated or enjoined as such, as now provided by law, on the application of any citizen or citizens of the county where the same may be located." The case was tried, at the interlocutory hearing, upon this agreed statement of facts: The Acme Brewing Company is a corporation owning and operating a brewery in the City of Macon, and engaged

1

in the sale of malt liquors on its premises; the company s plant is worth approximately half a million dollars; it employs a large number of men, and since the enactment of the prohibition law has never been charged with its violation; it holds a license from the ordinary of Bibb county, authorizing it to manufacture beverages and drinks and liquors in imitation of and intended as a substitute for beer, ale, wine, whiskey, and other alcoholic, spirituous, and malt liquors; and likewise holds from the municipality of Macon a similar license. The brewery company has paid to the commissioner of internal revenue the special tax required by the United States government for a retail malt-liquor dealer and for a wholesale malt-liquor dealer, as required by § 3239 of the United States Revised Statutes, and holds internal revenue special tax receipts for the current year. It is admitted that the defendant company is engaged in the business of manufacturing and selling a beverage commonly known as "near beer." This beverage is intended as a substitute for beer, and is in reality a malt liquor. For the purposes of the interlocutory hearing only, it is admitted that this beverage is nonintoxicating. Upon this agreed statement of facts the court refused to abate the brewery as a nuisance under the "blind-tiger" statute.

The turning point in this case is the meaning to be given to the word "malt" as used in the prohibition act of 1907 (Penal Code of 1910, § 426), and in the "blind-tiger" statute above quoted. The prohibition statute forbids the sale, or giving away to induce trade, at any place of business, or keeping or furnishing at any public place, or the manufacture of or keeping on hand at a place of business, "any alcoholic, spirituous, malt, or intoxicating liquors, or intoxicating bitters, or other drinks which, if drunk to excess, will produce intoxication; and any person so offending shall be guilty of a misdemeanor. Nor shall it be lawful in the limits of said State for intoxicating liquors to be sold in dispensaries, and the sale of intoxicating liquors in said State shall be prohibited to private persons and to the State, its officers and agents." Penal Code (1910), § 426. This act was approved August 6, 1907, and by its terms was to become effective on the 1st day of January thereafter. The statute was construed by the Court of Appeals in *Roberts* v. *State,* 4 *Ga. App.* 207 (60 S. E. 1082), in a decision pronounced on April 9, 1908. It was there ruled that: "The words 'alcoholic, spirituous, and malt liquors,' in the prohibition statute, mean intoxicating

liquors which can be used as a beverage, and which, when drunk to excess, will produce intoxication. If the liquid manufactured or sold, or kept on hand at a public place, or at a place of business as defined in the fourth headnote, can not be used as an intoxicating drink, because of other ingredients, or is not intoxicating because it does not contain a sufficient amount of alcohol to cause intoxication when drunk to excess, it is not within the prohibition of the statute, although it does contain as one of its ingredients an appreciable quantity of alcohol or spirituous liquor." The Court of Appeals, under the constitution of this State, is vested with exclusive jurisdiction for reviewing judgments of convictions for violations of this statute. A few months after this pronouncement by the Court of Appeals of its construction of the prohibition statute, the legislature was called in extraordinary session by the Governor to consider legislation pertaining to the disposition of the convicts of this State, including the establishment of a plan for the management, confinement, and labor of the convicts and including the undertaking of such works or work in connection with which convicts may be used, together with the raising of revenue and the appropriation of money to carry out such plans, and to provide for the establishment of juvenile courts and reformatories. At that session of the legislature a general act was passed for the future employment of felony and misdemeanor male convicts upon the public roads of the several counties of the State, and for a system of penology. Theretofore the State had derived a considerable revenue from the leasing of convicts. With the abolition of the old lease system the State lost this revenue. To supply the deficiency the legislature at this extraordinary session passed an act to provide a revenue to be used for the development and conduct of the penitentiary system of the State, by requiring a license tax to be paid by all persons, firms, or corporations manufacturing or selling "any imitation of or substitute for beer, ale, wine, whiskey, or other spirituous or malt liquors." Acts 1908, p. 1112. It will be observed that the same General Assembly which passed the prohibition act also enacted the revenue act, and presumably with a full knowledge of the construction of the former by the Court of Appeals. Apparently the legislature based its action upon the construction which the Court of Appeals had given to that act. Subsequently the revenue act imposing license fees upon the manufacture and sale of

imitations of the interdicted liquors was attacked as being in violation of art. 8, sec. 3, par. 1, of the constitution of this State (Civil Code of 1910, § 6578). That clause of the constitution declared that the special tax "on the sale of spirituous and malt liquors, which the General Assembly is hereby authorized to assess," is set apart and devoted for the support of common schools. The contention was that the legislature could not divert a tax derived from the license of any malt liquor from the school fund to the support of a penitentiary system. It was held by this court that "The expression 'malt liquors,' as used in article 8, section 3, paragraph 1, of the constitution, has reference to and was intended to include only such malt liquors as are intoxicating in their nature; and a special tax on persons engaging in the occupation of selling, storing, or manufacturing beverages which are an imitation of certain intoxicating malt liquors, and which imitations may be, as a matter of fact, made of malt and which are non-intoxicating, is not required to be set apart and devoted to the support of common schools under the provision of that paragraph just referred to." *Carroll* v. *Wright,* 131 *Ga.* 729 (63 S. E. 260). This ruling was reaffirmed in *Carswell* v. *Wright,* 133 *Ga.* 714 (66 S. E. 905). The Court of Appeals has consistently followed the construction placed upon the prohibition act in *Roberts* v. *State,* supra, in several cases; and the legislature has convened in session several times since the pronouncement in the *Roberts* case, and has passed no legislation conflicting with that construction. We have, then, both legislative and judicial construction that "malt liquors," referred to in the prohibition act of 1907, are confined to such as produce intoxication.

We are aware that there is a difference of opinion among courts of last resort as to the meaning of similar statutes; some taking the view that where the statute expressly forbids the sale of a certain class of liquors, non-intoxicating as well as intoxicating liquors of that class are included within the prohibition; but these rulings are based upon the particular statute in each case. As an illustration: The State of Oklahoma has a provision in its constitution forbidding the sale of "intoxicating liquor, including beer, ale, and wine." The legislature of that State enacted a law forbidding the sale of "any spirituous, vinous, fermented, or malt liquors, or any imitation or substitute therefor;" and it was held, that under the constitutional provision it was necessary to allege that the liquors

sold were intoxicating; but that under the statute it was not necessary to allege or to prove that the liquor sold was intoxicating. Moss v. State, 4 Okla. Cr. 247 (111 Pac. 950). In Nebraska, in one section of a statute the issuance of a license to sell "malt, spirituous, and vinous liquors" was prohibited, unless the applicant gave the bond required by the section. Another section prohibited any licensed person from selling intoxicating liquors to enumerated classes of persons. Another section made it a misdemeanor to "sell or give away, upon any pretext, malt, spirituous, or vinous liquors, or any intoxicating drinks," without having complied with the provisions of the act and obtained a license. Another section made it unlawful for any person to sell or give away "any malt, spirituous, and vinous liquors" on election day or Sunday. Still another section rendered it unlawful for any person to keep for purposes of sale without a license "any malt, spirituous, or vinous liquors." Construing these and other sections of the act as a whole, it was held that where the charge is for keeping for purposes of sale either spirituous or vinous liquors it is not necessary to allege or prove that the liquors kept for the purpose of sale are in fact intoxicating. Luther v. State, 83 Neb. 455 (120 N. W. 125, 20 L. R. A. (N. S.) 1146). An Iowa statute prohibited the selling or keeping for sale of "any intoxicating liquor, which term shall be construed to mean alcohol, ale, wine, beer, spirituous, vinous, and malt liquor, and all intoxicating liquor whatever," except as otherwise provided; and it was held that a non-intoxicating malt liquor fell within the statute. Sawyer v. Botti, 147 Iowa, 453 (124 N. W. 787, 27 L. R. A. (N. S.) 1007). It will be noted that the statutes in the cases to which reference has just been made specifically class malt liquor as an intoxicating liquor, whether or not it is such in fact. In other States a contrary construction has been placed upon statutes of this character. Thus, in Kentucky it has been held that "a prohibition of the sale of spirituous, vinous, and malt liquors does not include malt beverages containing so small a percentage of alcohol that the largest quantity that can be drunk will not intoxicate." City of Bowling Green v. McMullen, 134 Ky. 742 (122 S. W. 823, 26 L. R. A. (N. S.) 895). In Louisiana it has been held that the term "malt liquor," as used in the provision of the constitution, which reads, "This restriction shall not apply to dealers in distilled, alcoholic, or malt liquors," must be regarded as applying to malt

liquors which are, or may be, used as beverages, and which are intoxicating, and as having no application to malt liquors which are not, or may not be, so used, and are not intoxicating. City of Shreveport *v.* Smith, 130 La. 126 (57 So. 652). In West Virginia it was held that under an indictment charging the defendant with selling without license spirituous liquors, wine, ale, or beer, or drinks of like nature, the defendant had the right to show that the liquor which he sold was non-intoxicating. State *v.* Durr, 69 W. Va. 251 (71 S. E. 767, 46 L. R. A. (N. S.) 764). It would be idle to undertake an analysis of the statutes of other States, as each statute must stand upon its own footing.

A brief history of the temperance legislation in this State, culminating in the prohibition act of 1907, will show that it was aimed against the baneful effect of intoxicants. The first effort was at regulation by license. Then came sundry local acts prohibiting the sale of intoxicating liquor in certain localities. Later on the general local option act was passed, allowing counties by vote to adopt its provisions. That act prohibited the sale of intoxicating liquors substantially in the language of the general prohibition act; and no contention, so far as the official records of this court disclose, has ever been made that a non-intoxicating liquor came within its provisions. During this period the legislature passed numerous acts aimed at the sale of intoxicants. No particular phrasing in describing these liquors has been observed. The statutes denounce as misdemeanors: the carrying of "intoxicating liquor" to Sunday schools or day schools (Penal Code (1910), § 436); the carrying to a church or place of worship of "any liquor or intoxicating drink" (§ 438); the furnishing of any "spirituous, malt, or intoxicating liquors" to any habitual drunkard (§ 443); the giving or furnishing "spirituous, intoxicating, or malt liquors" to any person at any election precinct on election day (§ 445). Plainly, these sections were designed against the use and sale of intoxicants. The "blind-tiger" statute was passed anterior to the prohibition act. In *Thompson* v. *Simmons,* 139 *Ga.* 845, 846 (78 S. E. 419), it was said: "The scope and nature of the remedy is apparent when we consider the purpose of the statute. At the time of its passage the sale of intoxicating liquor was prohibited by law in the majority of the counties in this State, and in others was permitted only under stringent regulation. In the 'dry' counties especially this pro-

hibitive legislation did not entirely suppress the sale of intoxicants. In some instances, for various reasons, the vendors of intoxicating liquors escaped prosecution or conviction, and yet the demoralizing effects of the illegal business were so apparent that the need of a civil remedy for the protection of the people in the vicinity of the place where intoxicating liquors were being unlawfully sold came under the notice of the legislature. The evil to be corrected was the illegal sale of intoxicating liquors; the remedy supplied by the legislature was a civil suit to abate or enjoin the sale of such liquors as a nuisance." We are, therefore, of the opinion that neither the "blind-tiger" statute nor the prohibition act was intended to apply to the sale of a non-intoxicating malt liquor. For the purposes of the hearing it was admitted that the malt liquor manufactured and sold by the brewing company was in fact a non-intoxicating liquor. It follows, therefore, from what has been said, that the court did not err in refusing to abate the brewery as a nuisance under the "blind tiger" statute.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*