(August 3, 1910.)

## In re JACOB LOCKMAN, Habeas Corpus.

[110 Pac. 253.]

INTOXICATING LIQUORS DEFINED—LOCAL OPTION STATUTE—NEAR BEER—MALT AND FERMENTED LIQUORS.

(Syllabus by the court.)

1. Section 31 of the local option statute (1909 Sess. Laws, page 18) defines intoxicating liquors as including "spirituous, vinous, malt and fermented liquors, and all mixtures and preparations thereof, including bitters and other drinks that may be used as a beverage and produce intoxication."

2. Under the definition given by the legislature in sec. 31 of the local option statute, all "spirituous, vinous, malt and fermented liquors" are declared as a matter of law to be intoxicating, and it is unnecessary for the state to prove that any liquor or beverage falling within the enumerated class will in fact produce intoxication.

3. Under the provisions of the local option statute (sec. 31 thereof), it is necessary for the state to prove the intoxicating quality of all mixtures and preparations used or intended to be used as beverages which do not fall within the enumerated class designated as "spirituous, vinous, malt and fermented liquors."

4. The legislature in the enactment of the local option statute evidently had in mind a twofold object—first, that of discouraging, and as far as possible preventing, intoxication, and intemperance in the use of intoxicants; and secondly, and equally important, that of protecting the youth of the state from acquiring a taste for intoxicants and the habit of indulging in drinks and beverages that contain the intoxicating element.

Original application for writ of *habeas corpus*. Writ issued and hearing had on return thereto. Petitioner remanded to the custody of the officer and proceeding dismissed.

Hawley, Puckett & Hawley, for Petitioner.

We do not believe that the statute interpreted by the usual rules by which a well-educated man would interpret any writing can be called ambiguous, for we cannot conceive of any

construction being correct which would limit the phrase "used as a beverage and produce intoxication," to the preceding words describing mixed drinks. If this statute is ambiguous, then we insist that the rule set forth in 26 Ency. of Law, at page 646 et seq., should be adopted.

"Statutes, in their nature penal, should not be extended by construction beyond their natural meaning." (*Ind. School Dist. v. Collins,* 15 Ida. 535, 128 Am. St. 76, 98 Pac. 857.)

There is one state in which the statutory provisions have sufficient analogy to the statutory provisions of our local option law for its decisions to be of guiding importance here. In the case of *Ex parte Gray* (Tex. Cr. App.), 83 S. W. 828, the court said: "If the liquor sold in the local option territory is not of an intoxicating quality, . . . . that is, if it is not such as to produce intoxication when taken in the stomach in such quantities as may practically be drunk, . . . . then it is not an offense to sell the same in local option territory." (See, also, *James v. State,* 49 Tex. Cr. 334, 91 S. W. 227.)

The defendant contends that the state is under the necessity of proving that "near beer" is an intoxicating liquor. At least the question of its intoxicating qualities would be referred to the triers of fact and would become solely a question for the jury. (*Potts v. State,* 50 Tex. Cr. 368, 123 Am. St. 847, 97 S. W. 477, 7 L. R. A., N. S., 194; *State v. Hughes,* 16 R. I. 403, 16 Atl. 911; *Rau v. People,* 63 N. Y. 277; *State v. Giersch,* 98 N. C. 720, 4 S. E. 193; *State v. Muncey,* 28 W. Va. 494; *Wall v. State,* 78 Ala. 417; *State v. Starr,* 67 Me. 242.)

Whether beer, which is not ale, porter or strong beer, is intoxicating is a question for the jury. (*Commonwealth v. Blos,* 116 Mass. 56; *State v. Sioux Falls Brewing Co.,* 5 S. D. 39, 58 N. W. 1, 26 L. R. A. 138; *Blatz v. Rorhrback,* 116 N. Y. 450, 22 N. E. 1049; cases cited on p. 120, 13 Am. & Eng. Ann. Cases.)

Our local option law never intended that the sale of any beverage should be prohibited in prohibition territories, unless that beverage is capable of producing intoxication.

D. C. McDougall, Attorney General, O. M. Van Duyn, J. H. Peterson, and F. A. Hagelin, for the State.

Under the class of statutes which declare that a certain class or certain classes of liquor, such as spirituous, vinous, malt, and fermented liquors, shall be deemed intoxicating, the question usually arises whether it is necessary to allege and prove that the particular liquor sold is in fact a spirituous, vinous, malt, or fermented liquor, and therefore intoxicating. See in this connection, as to proof in general, *Hewitt v. People*, 186 Ill. 336, 57 N. E. 1077, *affirming* 87 Ill. App. 367. Under such a statute it has been held that it is not necessary to allege that beer is a malt liquor. (*Welsh v. State*, 126 Ind. 71, 25 N. E. 883, 9 L. R. A. 664.) And, as the courts will take judicial notice that beer is a malt liquor, it is not necessary to introduce proof to that effect. (*Mullen v. State*, 96 Ind. 304; *Stout v. State*, 96 Ind. 407; *Douglas v. State*, 21 Ind. App. 302, 52 N. E. 238; *Myers v. State*, 93 Ind. 251 (*overruling Weis v. State*, 33 Ind. 204); *Klare v. State*, 43 Ind. 483; *Shaw v. State*, 56 Ind. 188; *Plunkett v. State*, 69 Ind. 68; and *Kurz v. State*, 79 Ind. 488.)

Where a statute expressly prohibits the sale of liquors, it is not necessary to allege in an indictment thereunder that the particular liquor or class of liquors, the sale of which is forbidden, is intoxicating. (*Farris v. Commonwealth*, 111 Ky. 236, 63 S. W. 615; *State v. Gill*, 89 Minn. 502, 95 N. W. 449; *State v. Evans*, 89 Minn. 506, 95 N. W. 1133; *State v. Thornton*, 63 N. H. 114; *State v. Jenkins*, 64 N. H. 375, 10 Atl. 699; *People v. Cox*, 106 App. Div. (N. Y.) 299, 94 N. Y. Supp. 526.)

Nor is it necessary upon the trial of such a prosecution to prove that the particular liquor or class of liquors is intoxicating. (*Bond v. State*, 56 Ark. 444, 19 S. W. 1062; *Bradshaw v. State*, 76 Ark. 562, 89 S. W. 1051; *Eaves v. State*, 113 Ga. 749, 39 S. E. 318; *Kettering v. Jacksonville*, 50 Ill. 39; *State v. O'Connell*, 99 Me. 61, 58 Atl. 59; *Reyfelt v. State*, 73 Miss. 415, 18 So. 925; *Schwaf v. People*, 4 Hun (N. Y.), 520; *State v. Piner*, 141 N. C. 760, 53 S. E. 305; *Hatfield v.*

*Commonwealth,* 120 Pa. 395, 14 Atl. 151; *State v. Rush,* 13
R. I. 198; *State v. Morehead,* 22 R. I. 272, 47 Atl. 545; *State
v. Gravelin,* 16 R. I. 272, 16 Atl. 914; *State v. Spaulding,* 61
Vt. 505, 17 Atl. 844.)

Sec. 31 of the local option law defines "malt liquor and
mixtures thereof" as an intoxicating liquor. Further, the
very fact that spirituous, malt and vinous liquors are par-
ticularly mentioned in the statute indicates that the legis-
lature had in mind that they were intoxicating.

The last three words of sec. 31 are intended as adjectives
only for the first subject immediately before it, to wit, "other
drinks." The legislature named all liquors that it could pos-
sibly think of that were intoxicating, and then further to for-
tify the law which they were passing they put on the last
clause referring to other drinks which could be shown to be
intoxicating. The punctuation is such that we have no right
to assume that the last three words of said section apply to
any other subject than the one immediately preceding it.

AILSHIE, J.—The petitioner, Jacob Lockman, was arrested
and taken before the probate court in Canyon county, charged
with selling intoxicating liquor in a prohibition district con-
trary to the local option statute. A preliminary examin-
ation was held, and the evidence taken has been made a part
of the petition in this case. The petitioner insists that the
complaint and depositions fail to show that he has committed
any public offense, and that he is therefore held unlawfully
and is entitled to his discharge. The undisputed evidence
as developed at the preliminary examination shows that the
petitioner sold to one Charles S. Paynter at the city of Nampa
four quart bottles of malt liquor, commonly known as "near
beer." It is admitted that Canyon county is a prohibition
district within the meaning of the local option statute. (1909
Sess. Laws, pp. 9 to 19.) It is also admitted that this liquor,
called "near beer," is a malt liquor. A chemist who analyzed
the near beer purchased from petitioner testified that he found
it contained 1.28% alcohol, and 7.1% malt extract. He also
testified that this beer did not contain enough alcohol to in-

toxicate anyone unless it would be in rare instances.　He says that a person could not drink enough of it to secure sufficient alcohol to intoxicate him.

It was practically conceded on the argument that this drink, designated near beer, is classed among the ''soft'' drinks or ''temperance'' beverages and is not ordinarily used as an intoxicant.

The only question to be determined in this case is whether or not the liquor or beverage called near beer falls within the purview of the local option statute as the words ''intoxicating liquors'' are defined in sec. 31 thereof.

That section reads as follows:

''Sec. 31.　The words 'intoxicating liquors' as used in this Act shall be deemed and construed to include spirituous, vinous, malt and fermented liquors, and all mixtures and preparations thereof, including bitters and other drinks that may be used as a beverage and produce intoxication.''

The petitioner contends that the words, ''that may be used as a beverage and produce intoxication,'' refer to and modify ''spirituous, vinous, malt and fermented liquors, and all mixtures and preparations thereof, including bitters and other drinks.''　In other words, the petitioner insists that the property or quality of producing intoxication is the test that must be applied in every case whether the liquor be vinous, malt, fermented, or a mixture or preparation thereof or any other drink.　On the other hand, the state contends that the lawmakers have unqualifiedly and arbitrarily defined ''spirituous, vinous, malt and fermented liquors'' as intoxicating as a matter of law, whether they be intoxicating as a matter of fact or not.　The state also contends that ''all mixtures and preparations thereof, including bitters and other drinks,'' are to be tested by the proofs as to whether they will in fact produce intoxication.　This case must be settled and determined upon the acceptance and application of one of these two views of the statute and theories of construction.

In support of the position taken by the defendant, he calls our attention to the following among other authorities: *Campbell v. City of Thomasville*, 6 Ga. App. 212, 64 S. E. 815;

*Stoner v. State,* 5 Ga. App. 716, 63 S. E. 602; *Ex parte Gray* (Tex. Cr.), 83 S. W. 828; *James v. State,* 49 Tex. Cr. 334, 91 S. W. 227; *Potts v. State,* 50 Tex. Cr. 368, 123 Am. St. 847, 97 S. W. 477, 7 L. R. A., N. S., 194. An examination of these cases discloses the fact that the Texas and Georgia courts construe somewhat similar statutes in harmony with the view maintained by the petitioner, and take the position that the statutes of those states were intended to prevent intemperance and intoxication, and that the test as to whether the liquor comes within the purview of those statutes is to be determined upon the intoxicating property or quality of the liquor or drink.

The state, on the other hand, calls our attention to a great array of authorities which seem to support its contention. Among the many cases cited, the following seem to be closely in point here: *Sawyer v. Botti* (Iowa), 124 N. W. 787; *Luther v. State,* 85 Neb. 674, 120 N. W. 125; *State v. Frederickson,* 101 Me. 37, 115 Am. St. 295, 63 Atl. 535, 6 L. R. A., N. S., 186, 8 Ann. Cas. 48; *State v. Gill,* 89 Minn. 502, 95 N. W. 449; *State v. Piche,* 98 Me. 348, 56 Atl. 1052.

In *Sawyer v. Botti,* the supreme court of Iowa as recently as February of this year had occasion to consider a statute somewhat similar to ours, and Mr. Justice McClaim speaking for the court said:

"The statute (Code, sec. 2382) prohibits the selling or keeping for sale, etc., of 'any intoxicating liquor, which term shall be construed to mean alcohol, ale, wine, beer, spirituous, vinous and malt liquor, and all intoxicating liquor whatever,' except as otherwise provided. It is apparent, therefore, that the prohibition is twofold: First, of the sale of any liquor which is in fact intoxicating; second, of certain described liquors, whether intoxicating or not. In the second class are enumerated beer and malt liquor, and if the beverage in question is beer or malt liquor, then the fact that it is so manufactured as not to be intoxicating in its ordinary use as a beverage is immaterial. . . . .

"The manufacturer cannot bring a malt liquor within the class of liquors not prohibited by the statute by giving it some

name other than that of beer, much less can he do so by·adding a qualifying descriptive term to the word 'beer' used in the name.

''We reach the conclusion without the slightest doubt that the beverage in question, being a liquor manufactured from malted grain by a process involving fermentation, no matter how slight the fermentation may be, and irrespective of the amount of alcohol which it actually contains, and also without regard to whether it is in fact intoxicating, is within the statutory description of liquors the sale of which is prohibited.''

In *Luther v. State,* the supreme court of Nebraska had under consideration a statute which provides that ''all persons who shall sell or give away, upon any pretext, malt, spirituous, or vinous liquors, or any intoxicating drinks,'' without first having complied with the provisions of the act and obtained a license, should be deemed guilty of a misdemeanor, etc. In course of the consideration of that statute, the court said:

''It is contended by counsel for plaintiff in error that it was the legislative intent to suppress the sale of intoxicating liquors, and that, although the term 'malt liquors' is used in the act, yet it was not the purpose to prevent the sale of malt liquors or liquids, unless they contained a sufficient quantity of alcohol to produce intoxication; or, stated differently, that the language used in secs. 11 and 20 must be construed to mean as if it read 'intoxicating malt liquor.' I cannot read the statute in that light. As well might we apply the adjective to the words 'spirituous' and 'vinous.' It is my opinion that the legislature realized and appreciated the fact that malt, spirituous, and vinous liquors are equally largely used as a beverage and are alike injurious to the consumer, if not by producing immediate intoxication when taken in small quantities, by producing the same effect when more is taken and at the same time creating an abnormal appetite which leads to dissipation and inebriety. At any rate the law prohibits the sale of 'malt liquors' without a license, and we must obey its plain mandate.''

We quote the foregoing extracts to show what other courts have said of legislation similar to our own statute.

It will thus be seen that courts of distinction and high standing and of states widely separated have taken contrary views of similar statutes. We shall therefore endeavor to ascertain from an independent examination what the legislature intended by the enactment of the statute under consideration, and in doing so our first consideration should be given to the natural, ordinary and simple meaning and import of the language employed. The state contends that the words "that may be used as a beverage and produce intoxication" apply to and modify only the clause in which they are found and refer to the mixtures and preparations named therein. This construction is in harmony with our understanding of the language used. On the other hand, if we should adopt the view taken by the defendant we would have to hold that each kind or class enumerated commencing with the word "spirituous" is modified by the phrase "that may be used as a beverage and produce intoxication." The section written out in full, as defendant contends that it was intended, would read as follows:

"Sec. 31. The words 'intoxicating liquors' as used in this Act shall be deemed and construed to include spirituous liquors that may be used as a beverage and produce intoxication, vinous liquors that may be used as a beverage and produce intoxication, malt liquors that may be used as a beverage and produce intoxication, and fermented liquors that may be used as a beverage and produce intoxication, and all mixtures and preparations thereof, including bitters and other drinks, that may be used as a beverage and produce intoxication."

We cannot agree with this contention. It is not to be presumed that the legislature would have entered into an enumeration of certain drinks commonly known and understood to contain the element of alcohol and to be intoxicating if they had in fact intended that the test in all cases should be whether or not the drink is such as will produce intoxication. There would have been no reason for or object in enumerating these various liquors, distilled, vinous, malt, and

fermented, if the legislature had intended that in all cases
the test should be whether or not the drink is in fact such
as will produce intoxication. The legislature in the enact-
ment of this law evidently had in mind a twofold object:
First, that of discouraging and as far as possible preventing
intoxication, and intemperance in the use of intoxicants; sec-
ond, and equally important, that of protecting and prevent-
ing the boys and young men of the state from acquiring a
taste for intoxicants and the habit of indulging in drinks and'
beverages that contain the intoxicating element. The legis-
lature likewise recognized the fact that vinous, malt and fer-
mented liquors all contain, to some extent, the element of
alcohol, although it may not be to such a degree as will pro-
duce intoxication. They therefore concluded when writing
this statute defining the words "intoxicating liquors" to de-
clare as a matter of law that all "spirituous, vinous, malt
and fermented liquors" are intoxicating, irrespective of the
amount of alcohol they may contain and whether or not the
particular kind of drink will in fact produce intoxication.
They must also have had in mind the difficulty that would
arise in the enforcement of such a law as they were enacting
if they left it to be proven in every case of the sale of a
vinous, malt or fermented liquor, whether or not the same was
in fact such as would produce intoxication. If it were a
question of fact in each case, one man might be convicted for
the sale of a certain brand of malt or fermented liquor, while
another man might be acquitted for the sale of the identical
brand of liquor. Under that view of the statute near beer
might be sold in one prohibition district with safety and in
another the sale prove to be a violation of the statute. This
is a drink that furnishes great opportunities for violation of
the statute. It was said by the supreme court of North
Carolina, who evidently spoke from the record, in *State v.
Dannenberg* (N. C.), 66 S. E. 301, that: "Although near
beer properly made is a nonintoxicating beverage, the sale of
it furnishes extraordinary opportunities for the violation of
the state prohibition law; that it is made by those who make
beer, sold by those who sell beer, and drunk by those who

drink beer; and that 'it looks like beer, smells like beer, and tastes like beer.' "

In our judgment it was the clear and unmistakable intent of the legislature to say, as they had an undoubted right to say (*State v. Frederickson*, 101 Me. 37, 115 Am. St. 295, 6 L. R. A., N. S., 186, 63 Atl. 535, 8 Ann. Cas. 48; Woollen and Thornton on Intoxicating Liquors, secs. 5 and 114) that all "spirituous, vinous, malt and fermented liquors" should be treated as intoxicating within the meaning of this statute. The lawmakers also appreciated the fact that there would be many other mixtures and preparations used as a beverage that would produce intoxication and which the law-making power could not specifically enumerate, and so they concluded that with reference to this latter class of drinks and beverages they would fix the test as *one of fact in each case as to whether the drink or beverage would produce intoxication.* We conclude, therefore, that section 31 of the local option law defining "intoxicating liquors" contains two divisions or classes of liquors or beverages: First, "spirituous, vinous, malt and fermented liquors" which are declared as a matter of law to be intoxicating, and for which no proof is required except to show that they come within the enumeration; and second, all other mixtures and preparations thereof which will in fact produce intoxication. In the latter case the state must prove that the liquor is such that it may be used as a beverage and produce intoxication.

It is conceded that "near beer" is a malt liquor. It follows, therefore, from what has been said that it falls within the definition of sec. 31 of the local option statute, and is declared as a matter of law to be an intoxicating liquor, and cannot be sold in a prohibition district.

We conclude that the petitioner is properly held under process issued from a court of competent criminal jurisdiction. Petitioner is remanded to the custody of the sheriff of Canyon county. Proceeding dismissed.

Sullivan, C. J., concurs.