(No. 6022.   June 17, 1933.)

In the Matter of the Application of J. HOWARD SPEER for Writ of Habeas Corpus.

[23 Pac. (2d) 239.]

Chapman & Chapman, for Petitioner.

Henry M. Hall, for Respondent.

R. M. McCracken and Harry S. Kessler, as *Amici Curiae.*

Bert H. Miller, Attorney General, and Ariel L. Crowley, Assistant Attorney General, as *Amici Curiae.*

Maurice H. Greene, as *Amicus Curiae*.

MORGAN, J.—April 7, 1933, J. Howard Speer, petitioner, was, by a justice of the peace in and for Jerome precinct, Jerome county, on preliminary examination, held to answer in district court to the charge of having sold, on said date in said county, two bottles of liquor, commonly called near beer, for beverage purposes. He was remanded to the custody of the sheriff, and has procured to be issued from this court a writ of *habeas corpus* for the purpose of having the legality of his detention in custody determined. A transcript of the evidence taken by the committing magistrate is before us and shows petitioner sold the liquor, as charged, and it is stipulated, by his counsel and the prosecuting attorney, that it is a malt liquor, not intoxicating in fact and not capable of producing intoxication. The question

presented is as to whether selling such liquor, in Idaho, is a crime.

Idaho Code Annotated, secs. 18–101 and 18–102, are as follows:

18–101. ''The manufacture, disposal and transportation of intoxicating liquors for beverage purposes are prohibited in the state of Idaho.''

18–102. ''The words 'intoxicating liquors' as used in this title shall be deemed and construed to include spirituous, vinous, malt and fermented liquors, and all mixtures and preparations thereof, including bitters and other drinks that may be used as a beverage and produce intoxication.''

Sections 18–201 and 18–216 make unlawful the sale of intoxicating liquor, except as by statute provided, and sec. 18–220 fixes the penalty at a fine of not less than $100 nor more than $1,000 and imprisonment not less than 60 days nor more than a year.

The definition of the words ''intoxicating liquors'' found in sec. 18–102 was enacted by the legislature in 1909 as sec. 31 of what was known as the ''local option'' law, and has been carried into the various codifications of, and still remains a part of, the statutory law of Idaho.

This question came before this court in 1910, in *Re Lockman,* 18 Ida. 465, 110 Pac. 253, 46 L. R. A., N. S., 759. In that case Justice Ailshie carefully analyzed the definition of the term ''intoxicating liquors'' and said:

''We conclude, therefore, that section 31 of the local option law defining 'intoxicating liquors' contains two divisions or classes of liquors or beverages: First, 'spiritous, vinous, malt and fermented liquors' which are declared as a matter of law to be intoxicating, and for which no proof is required except to show that they come within the enumeration; and second, all other mixtures and preparations thereof which will in fact produce intoxication. In the latter case the state must prove that the liquor is such that it may be used as a beverage and produce intoxication.'' (See, also, *State v. Petrogalli,* 34 Ida. 232, 200 Pac. 119.)

As controlling the construction which should be given to our statute defining intoxicating liquors, counsel for petitioner cite *United States v. Standard Brewery*, 251 U. S. 210, 40 Sup. Ct. 139, 64 L. ed. 229, wherein the "War Prohibition Act of Congress" was construed, and quote therefrom as follows:

" 'That after June thirtieth, nineteen hundred and nineteen, until the conclusion of the present war, and thereafter until the termination of demobilization, the date of which shall be determined and proclaimed by the President of the United States, for the purpose of conserving the man power of the nation, and to increase efficiency in the production of arms, munitions, ships, food, and clothing for the Army and Navy, it shall be unlawful to sell for beverage purposes any distilled spirits, and during said time no distilled spirits held in bond shall be removed therefrom for beverage purposes except for export. After May first, nineteen hundred and nineteen, until the conclusion of the present war and thereafter until the termination of demobilization, the date of which shall be determined and proclaimed by the President of the United States, no grains, cereals, fruit, or other food product shall be used in the manufacture or production of beer, wine, or other intoxicating malt or vinous liquor for beverage purposes. After June thirtieth, nineteen hundred and nineteen, until the conclusion of the present war and thereafter until the termination of demobilization, the date of which shall be determined and proclaimed by the President of the United States, no beer, wine, or other intoxicating malt or vinous liquor shall be sold for beverage purposes except for export.' . . . .

"The prohibitions extend to the use of food products for making 'beer, wine, or other intoxicating malt or vinous liquors for beverage purposes.' These provisions are of plain import and are aimed only at intoxicating beverages. It is elementary that all of the words used in a legislative act are to be given force and meaning (*Washington Market Co. v. Hoffman*, 101 U. S. 112, 115, 25 L. ed. 782, 783); and of course the qualifying words 'other intoxicating' in this

act cannot be rejected. It is not to be assumed that congress had no purpose in inserting them, or that it did so without intending that they should be given due force and effect. The government insists that the intention was to include beer and wine, whether intoxicating or not. If so, the use of this phraseology was quite superfluous, and it would have been enough to have written the act without the qualifying words.

"This court had occasion to deal with a question very similar in character in the case of the *United States v. United Verde Copper Co.*, 196 U. S. 207, 49 L. ed. 449, 25 Sup. Ct. 222, where an act permitted the use of timber on the public lands for building, agricultural, mining, and other domestic purposes, and held that we could not disregard the use of the word 'other,' notwithstanding the contention that it should be eliminated from the statute in order to ascertain the true meaning. So here, we think it clear that the framers of the statute intentionally used the phrase 'other intoxicating' as relating to and defining the immediately preceding designation of beer and wine. 'As a matter of ordinary construction, where several words are followed by a general expression as here, which is as much applicable to the first and other words as to the last, that expression is not limited to the last, but applies to all.' (Lord Bramwell in *Great Western R. Co. v. Swindon & C. Extension R. Co.*, L. R. 9 App. Cas. 787, 808.)"

That the legislature intended by sec. 18–102 to define malt liquor as intoxicating, regardless of its alcoholic content, or lack of it, is no longer a debatable question. That interpretation was placed on it in re *Lockman*, above cited, in 1910 and has been part of the case law of this state since. Had the meaning attributed to the law in the Lockman case not coincided with the legislative intention the definition of "intoxicating liquors" would undoubtedly have been amended and the will of the law-making branch of the state government made clear. If that definition is to be changed now, so as to mean something other than this court held it to mean more than twenty years ago, the change must be

made by the legislature. It is beyond the power of the court to do so.

Article II of Idaho Constitution contains but one section. It divides the government of this state into three departments and undertakes to prohibit those belonging to one department from exercising powers belonging to either of the others. It is as follows:

"The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted."

It is the duty of the legislature to make the laws, and, in enacting sec. 18–102, it functioned within the scope of that duty. It was the duty of the court to interpret that statute, and it did so in the Lockman case. If the law, so interpreted, is to be changed that is a legislative, not a judicial, function.

Is prohibition of sale of nonintoxicating malt liquors, in order to make more efficient the law prohibiting sale of intoxicating liquors, within the police powers of the state?

In re *Crane*, 27 Ida. 671, 151 Pac. 1006, L. R. A. 1918A, 942, we held prohibition of possession of intoxicating liquor to be within the police powers of the state and, in so doing, quoted at length from and followed the opinion of Justice Harlan in *Mugler v. Kansas*, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. ed. 205. Again we quote from and follow that opinion:

"But by whom, or by what authority, is it to be determined whether the manufacture of particular articles of drink either for general use or for the personal use of the maker, will injuriously affect the public? . . . . Under our system that power is lodged with the legislative branch of the government. It belongs to that department to exert what are known as the police powers of the state, and to determine, primarily, what measures are appropriate or

needful for the protection of the public morals, the public health or the public safety.

"It does not at all follow that every statute enacted ostensibly for the promotion of these ends is to be accepted as a legitimate exertion of the police powers of the state. There are, of necessity, limits beyond which legislation cannot rightfully go. While every possible presumption is to be indulged in favor of the validity of the statute, *Sinking Fund Cases*, 99 U. S. 700, 718, 25 L. ed. 496, 501, the courts must obey the constitution rather than the law-making department of government, and must, upon their own responsibility, determine whether, in any particular case, these limits have been passed. 'To what purpose,' it was said in *Marbury v. Madison*, 5 U. S. (1 Cranch) 137, 167, 2 L. ed. 60, 70, 'are powers limited, and to what purpose is that limitation committed to writing, if these limits may, at any time, be passed by those intended to be restrained? The distinction between a government with limited and unlimited powers is abolished, if those limits do not confine the persons on whom they are imposed, and if acts prohibited and acts allowed are of equal obligation.' The courts are not bound by mere forms, nor are they to be misled by mere pretenses. They are at liberty—indeed, are under a solemn duty—to look at the substance of things whenever they enter upon the inquiry whether the legislature has transcended the limits of its authority. If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the constitution."

The question of the power of a state to prohibit the sale of nonintoxicating malt and fermented liquors for beverage purposes has been before the courts frequently and, according to the weight of authority, if the purpose of the legislature in prohibiting the sale of such nonintoxicating liquors was to aid in the prohibition of the sale of intoxicants, its act is within the police powers. See the following cases and

notes thereto: *State v. Frederickson,* 101 Me. 37, 63 Atl. 535, 115 Am. St. 295, 8 Ann. Cas. 48, 6 L. R. A., N. S., 186; *Luther v. State,* 83 Neb. 455, 120 N. W. 125, 20 L. R. A., N. S., 1146; *State v. Fargo Bottling Works Co.,* 19 N. D. 396, 124 N. W. 387, 26 L. R. A., N. S., 872; *Bowling Green v. McMullen,* 134 Ky. 742, 122 S. W. 823, 26 L. R. A., N. S., 895; *Ex parte Lockman,* 18 Ida. 465, 110 Pac. 253, 46 L. R. A., N. S., 759; *Cureton v. State,* 135 Ga. 660, 70 S. E. 332, 49 L. R. A., N. S., 182; *State v. Hemrich,* 93 Wash. 439, 161 Pac. 79, L. R. A. 1917B, 962.

In re *Lockman* the court, speaking of the reasons which probably actuated the legislature in prohibiting the sale of malt liquors, regardless of their alcoholic content, or whether they would produce intoxication, said:

"They (the members of the legislature) must also have had in mind the difficulty that would arise in the enforcement of such a law as they were enacting if they left it to be proven in every case of the sale of a vinous, malt or fermented liquor, whether or not the same was in fact such as would produce intoxication."

That being the motive which prompted the legislature to prohibit the sale of nonintoxicating, vinous, fermented and malt liquors, the purpose of the enactment was to protect the public health, the public morals and the public safety, and the wisdom of such legislation is a question for the legislature and not for the courts.

In re *Crane,* above cited, we quoted Justice Hughes in *Purity Extract & Tonic Co. v. Lynch,* 226 U. S. 192, 33 Sup. Ct. 44, 57 L. ed. 184, as follows:

"That the state, in exercise of its police power, may prohibit the selling of intoxicating liquors, is undoubted. . . . . It is also well established that, when a state exerting its recognized authority, undertakes to suppress what it is free to regard as a public evil, it may adopt such measures having reasonable relation to that end as it may deem necessary in order to make its action effective. It does not follow that because a transaction, separately considered, is innocuous, it may not be included in a prohibition the scope

of which is regarded as essential in the legislative judgment to accomplish a purpose within the admitted power of the government. . . . . With the wisdom of the exercise of that judgment the court has no concern; and unless it clearly appears that the enactment has no substantial relation to a proper purpose, it cannot be said that the limit of legislative power has been transcended. To hold otherwise would be to substitute judicial opinion of expediency for the will of the legislature—a notion foreign to our constitutional system.''

Justice Hughes further said:

''It was competent for the legislature of Mississippi to recognize the difficulties besetting the administration of laws aimed at the prevention of traffic in intoxicants. It prohibited, among other things, the sale of 'malt liquors.' In thus dealing with a class of beverages which, in general, are regarded as intoxicating, it was not bound to resort to a discrimination with respect to ingredients· and processes of manufacture which, in the endeavor to eliminate innocuous beverages from the condemnation, would facilitate subterfuges and frauds and fetter the enforcement of the law. A contrary conclusion, logically pressed, would save the nominal power while preventing its effective exercise. The statute establishes its own category. The question in this court is whether the legislature had power to establish it. The existence of this power, as the authorities we have cited abundantly demonstrate, is not to be denied simply because some innocent articles or transactions may be found within the proscribed class. The inquiry must be whether, considering the end in view, the statute passes the bounds of reason and assumes the character of a merely arbitrary fiat.

''That the opinion is extensively held that a general prohibition of the sale of malt liquors, whether intoxicating or not, is a necessary means to the suppression of trade in intoxicants, sufficiently appears from the legislation of other states and the decision of the courts in its construction. *State v. O'Connell*, 99 Me. 61, 58 Atl. 59; *State v. Jenkins*, 64 N. H. 375, 10 Atl. 699; *State v. York*, 74 N. H. 125, 127,

65 Atl. 685, 13 Ann. Cas 116; *State ex rel. Guilbert v. Kauff-man,* 68 Ohio St. 635, 67 N. E. 1062; *Luther v. State,* 83 Neb. 455, 20 L. R. A., N. S., 1146, 120 N. W. 125; *Pennell v. State,* 141 Wis. 34, 123 N. W. 115. We cannot say that there is no basis for this widespread conviction.''

The act of the legislature, prohibiting the sale of nonin-toxicating malt liquors in aid of the effort to .prohibit the sale of intoxicating liquors, is a valid exercise of the police powers of the state and does not violate the Constitution. Therefore, the sale of near beer, a malt liquor, regardless of its alcoholic content, or lack of it, is a crime in Idaho. The writ of *habeas corpus* is quashed.

Givens and Wernette, JJ., concur.

BUDGE, C. J., Concurring Specially.—From the petition filed herein it appears that by complaint filed in a justice court of Jerome .county petitioner was charged as follows: ''that the petitioner knowingly, wrongfully, unlawfully, wil-fully and maliciously committed a misdemeanor by then and there selling to one Harry Beetham, for beverage purposes, one bottle of Budweiser Brew and one bottle of Becker's Becco, said bottles containing what is commonly known as near beer and being a malt liquor and as a matter of law deemed intoxicating. . . . . '' that a warrant was issued and petitioner was arrested; that a preliminary examination was held, during which it was admitted that the bottles admitted in evidence contained a malt liquor. It appears that upon cross-examination of the only witness testifying, the follow-ing took place:

''Q. Mr. Davis, do you know whether or not the liquor in these bottles is intoxicating?

''Henry M. Hall: We object, your Honor, for the reason heretofore set out, that in the decision of the Supreme Court as already cited, that being the case of *State vs. Lockman,* it is not necessary to prove that the exhibits in question con-tain alcohol in any capacity (quantity) nor that it will produce intoxication.

"The Court: The objection is sustained."

Whereupon, counsel for petitioner moved to discharge the defendant for the reason that the prosecution had failed to prove that any crime or the crime charged had been committed, or that there was probable cause to believe the defendant guilty thereof, which motion was overruled. The court thereupon held petitioner to answer in the district court, the order of commitment being indorsed upon the depositions.

The grounds upon which petitioner seeks to be discharged from custody by this writ are that he was committed on said criminal charge without reasonable and probable cause, in that it was not shown that the liquor alleged to have been sold by him was capable, when used as a beverage, of producing intoxication, and that the decision of this court in re *Lockman*, 18 Ida. 465, 110 Pac. 253, 46 L. R. A., N. S., 759, upon which the committing magistrate based his ruling in refusing to permit evidence of the intoxicating qualities of said liquor, is an erroneous, strained and improper construction of I. C. A., sec. 18–102. With respect to commitment after preliminary examination, this court has announced the rule that it cannot weigh the evidence on *habeas corpus*, but if it wholly fails to disclose a public offense for which a prisoner may be held on preliminary examination, then the petitioner would be entitled to his discharge (*In re Heigho*, 18 Ida. 566, 110 Pac. 1029, Ann. Cas. 1912A, 138, 32 L. R. A., N. S., 877; *In re Knudtson*, 10 Ida. 676, 79 Pac. 641), and that the court may inquire into and examine the proofs submitted at a preliminary hearing to see whether or not, first, there is any evidence tending to show that a public offense has been committed; second, there was cause to believe the accused committed it. (*In re Baugh*, 30 Ida. 387, 164 Pac. 529.) In the cases cited, the question was not raised as to whether *habeas corpus* was the proper remedy, as here. Here it was admitted that the beverage sold was a malt liquor and it was proven that defendant sold it. Under the decision in re *Lockman, supra,* the admission that it was a malt liquor established as "intoxicating liquor" as

a matter of law, the sale of which is forbidden by I. C. A., sec. 18–201, with which crime petitioner was charged. The evidence was therefore sufficient to justify the committing magistrate in holding the petitioner to the district court. The committing magistrate could not rule otherwise than he did upon the objection to the evidence complained of, inasmuch as all courts of intermediate jurisdiction are controlled and bound by the decisions of courts of ultimate resort. (*State v. Moore*, 36 Ida. 565, 112 Pac. 349; *Sala v. Crane*, 38 Ida. 402, 412, 221 Pac. 556.)

Furthermore, this court cannot on *habeas corpus* convert itself into an appellate court for the examination of questions reviewable on appeal. (*In re Davis*, 23 Ida. 473, 130 Pac. 786; *In re Knudtson, supra.*) The correctness of the court's ruling in the admission or exclusion of evidence cannot be reviewed on *habeas corpus*. (29 C. J. 47, sec. 38; *Ex parte Kawaguchi*, 12 Cal. App. 498, 107 Pac. 727; *Ex parte Dixon*, 43 Nev. 196, 183 Pac. 642; *Ex parte Kaster*, 52 Cal. App. 454, 198 Pac. 1029; *State ex rel. Swift v. Dillon*, 75 Fla. 785, 79 So. 29; *People v. Siman*, 284 Ill. 28, 119 N. E. 940, 942; *State ex rel. Nordstrum v. Superintendent of Workhouse*, 146 Minn. 140, 178 N. W. 610; *Charlton v. Kelly*, 229 U. S. 447, 33 Sup. Ct. 945, 57 L. ed. 1274, 46 L. R. A., N. S., 397; *Ex parte Selicow*, 100 Neb. 615, 160 N. W. 991.)

For the foregoing reasons I concur in the conclusion reached in the majority opinion that the writ should be quashed and petitioner remanded to custody.

HOLDEN, J., Dissenting.—Sections 18–101 and 18–102, I. C. A., read as follows:

18–101. "The manufacture, disposal and transportation of intoxicating liquors for beverage purposes are prohibited in the state of Idaho."

18–102. "The words 'intoxicating liquors' as used in this title shall be deemed and construed to include spirituous, vinous, malt and fermented liquors, and all mixtures and

preparations thereof, including bitters and other drinks that may be used as a beverage and produce intoxication.''

The legislature thus expressly and unmistakably prohibits the manufacture, transportation, disposal or sale of *intoxicating* liquors for beverage purposes. These sections, as to those matters, do not require interpretation or explanation, laymen and lawyers alike have only to read them to at once understand that it is unlawful to manufacture, transport or sell *intoxicating* liquor in the state of Idaho for beverage purposes. It will be observed that the manufacture, transportation and sale of malt liquors containing no alcohol whatever are not expressly prohibited. Nevertheless, by ingenious construction it is held that the sale of malt liquor, having no alcoholic content whatever, is also prohibited. It is my position that the terms of said penal statute ought to be sufficiently clear to inform men of common intelligence that the sale of malt liquor in the state of Idaho, even though it contains no alcohol whatever, is unlawful and will subject the seller to prosecution and imprisonment. The mere reading of the statute will at once disclose that it gives no hint to a layman, unfamiliar with legal terms and rules of construction, that to sell malt liquor, containing no alcohol whatever, constitutes a crime. That, to say the least, the terms of the statute are vague and uncertain, concerning malt liquors having no alcoholic content whatever, is made quite clear in that the courts differ in the construction of statutes similar to the Idaho statute in question, as acknowledged in the *Lockman Case,* 18 Ida. 465, 110 Pac. 253, 46 L. R. A., N. S., 759. In that case Lockman was charged with selling ''near beer.'' Counsel for Lockman contended ''that the property or quality of producing intoxication'' was the proper test to be applied, and in the consideration of that contention Justice Ailshie (the author of the opinion) states:

''In support of the position taken by the defendant, he calls our attention to the following among other authorities: *Campbell v. City of Thomasville,* 6 Ga. App. 212, 64 S. E. 815; *Stoner v. State,* 5 Ga. App. 716, 63 S. E. 602; *Ex parte*

*Gray,* (Tex. Cr.) 83 S. W. 828; *James v. State,* 49 Tex. Cr. 334, 91 S. W. 227; *Potts v. State,* 50 Tex. Cr. 368, 123 Am. St. 847, 97 S. W. 477, 7 L. R. A., N. S., 194. An examination of these cases discloses the fact that the Texas and Georgia courts construe somewhat similar statutes in harmony with the view maintained by the petitioner, and take the position that the statutes of those states were intended to prevent intemperance and intoxication, and that the test as to whether the liquor comes within the purview of those statutes is to be determined upon the intoxicating property or quality of the liquor or drink.''

''The state, on the other hand, calls our attention to a great array of authorities which seem to support its contention. Among the many cases cited, the following seem to be closely in point here: *Sawyer v. Botti,* 147 Iowa, 453, 124 N. W. 787 [27 L. R. A., N. S., 1007]; *Luther v. State,* 83 Neb. 674, 120 N. W. 125 [20 L. R. A., N. S., 1146]; *State v. Frederickson,* 101 Me. 37, 115 Am. St. 295, 63 Atl. 535, 6 L. R. A., N. S., 186, 8 Ann. Cas. 48; *State v. Gill,* 89 Minn. 502, 95 N. W. 449; *State v. Piche,* 98 Me. 348, 56 Atl. 1052.

. . . . . . . . . . . . . .

''We quote the foregoing extracts to show what other courts have said of legislation similar to our own statute.''

''It will thus be seen that courts of distinction and high standing and of states widely separated have taken contrary views of similar statutes.''

When the terms of a statute are so vague and uncertain that ''courts of distinction and high standing and of states widely separated'' cannot agree, it must follow that the average citizen could not understand them. My views are very clearly and forcefully expressed by the supreme court of the United States, as follows:

''That the terms of a penal statute, creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the

doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.'' (*Connally v. General Constr. Co.*, 269 U. S. 385, 391, 46 Sup. Ct. 126, 70 L. ed. 322, 328; *Champlin Refining Co. v. Corporation Com.*, 286 U. S. 208, 52 Sup. Ct. 559, 74 L. ed. 1062.)

And the supreme court of the United States in *Connally v. General Construction Co., supra,* quotes with approval the following clear statement of the law, from the case of the *United States v. Capital Traction Co.*, 34 App. D. C. 592, 19 Ann. Cas. 68:

'' . . . . The dividing line between what is lawful and unlawful cannot be left to conjecture. The citizen cannot be held to answer charges based upon penal statutes whose mandates are so uncertain that they will reasonably ᵒadmit of different construction. A criminal statute cannot rest upon an uncertain foundation. The crime, and the elements constituting it, must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course it is lawful for him to pursue. Penal statutes prohibiting the doing of certain things, and providing a punishment for their violation, should not admit of such a double meaning that the citizen may act upon the one conception of its requirements and the courts upon another.''

It is a matter of common knowledge that ever since the decision in the Lockman case was announced, ''near beer'' has been openly displayed and publicly sold by drug-stores, cafes and grocery-stores, in every nook and corner of the state, and in no instance brought to the attention of this court has a single person been prosecuted. It is the duty of the Governor of the State of Idaho to see to it that the laws of this state are enforced, but no Governor of Idaho at any time since the decision in the Lockman case was rendered has ever demanded of any attorney general or county attorney that the Lockman case law against the sale of ''near beer'' be enforced, and no attorney general or county attorney has ever attempted to enforce it until Speer was arrested

and that arrest was made for the purpose of obtaining a modification of the decision in the Lockman case. The Lockman case law has been "a dead letter" ever since the case was decided, and, therefore, the legislature of this state has never had any reason whatever to amend the statute in question here.

Any and all legislation which has for its purpose the promotion of temperance and the conservation of the public health and morals is worthy of the highest praise, but in this case, that the Idaho statute absolutely prohibits either the manufacture, transportation or sale of *intoxicating* liquor is not denied by the petitioner, so that question is not involved here.

For the foregoing reasons I cannot concur in the majority opinion.