(No. 7203. May 16, 1945.)

ORLAND A. SCOTT, H. H. BARTON, C. E. ARMSTRONG, JAY E. MIDDLETON, W.W. RUSSELL, and CHARLES SHERRILL, personally and for and on behalf of all others similarly situated, Appellants, v. CHARLES C. GOSSETT, Governor; IRA H. MASTERS, Secretary of State, and FRANK LANGLEY, Attorney General, constituting and being the Board of Examiners of the State of Idaho; and CHARLES C. GOSSETT, Governor; IRA H. MASTERS, Secretary of State; FRANK LANGLEY, Attorney General; ERNEST G. HANSEN, State Auditor, and RUTH MOON, State Treasurer, constituting and being the State Board of Equalization of the State of Idaho, Respondents.

[158 Pac. (2d) 804.]

E. G. Elliott and Frawley & Barnes for appellants.

Frank Langley, Attorney General, and Charles S. Stout, Assistant Attorney General, for respondents.

AILSHIE, C. J.—This case comes here on appeal from the district court, sustaining a demurrer to plaintiff's amended complaint. The amended complaint was filed July 14, 1943. The prayer of the amended complaint is as follows:

"Wherefore plaintiffs pray that the Court determine the constitutionality of House Bill No. 207, Chapter 149 of the 1943 Session Laws, and, if the Court finds it to be unconstitutional and void, that the Court make and enter its judgment restraining and prohibiting the said Board of Equalization from certifying to the County Auditors of the various Counties of the State of Idaho any ad valorem

tax or taxes for State purposes for the years 1943 and 1944, and plaintiffs also pray that the court determine the constitutionality of *House Bill No. 74 of the twenty-seventh Session of the Idaho legislature, and, if the court finds it to be unconstitutional and void, that the court make and enter its judgment restraining and prohibiting the said Board of Examiners of the State of Idaho, and the said State Board of Equalization of the State of Idaho, from hereafter acting or proceeding under the provisions of House Bill No. 74* and Chapters 180 and 181 of the 1941 Session Laws of Idaho, in so far as said acts relate to the levying of taxes for and the disbursement of public money for public assistance to persons 65 years of age or older. And for such other and further relief as to the court may seem meet in the premises, and for costs incurred."

It can be seen at once that this appeal involves the identical question that was presented and passed upon in *Luker v. Curtis, Secy. of State,* 64 Ida. 703, 136 P. (2d) 978. After a very thorough briefing on the part of respective counsel and oral argument, this court held "that the legislature had the constitutional power to enact the repealing statute", that is, House Bill No. 74 of the twenty-seventh session. The opinion in that case was filed April 28, 1943. We are now, two years later, asked to re-examine the entire question and overrule and reverse the decision rendered and entered in that case. (*Luker v. Curtis,* supra.)

We are confronted at the outset by the defendants' contention, that the question raised by appellant was decided adversely to appellants in the Luker-Curtis case; and that the latter case has become the accepted law of the state, and, under the general rule in such cases, the issue is no longer open to further litigation or consideration.

Since the decision in the Luker case, a general election has taken place, a complete set of state and legislative officials has been elected, and no action has been taken, either by way of referendum, initiative, or legislative act, to change, alter or repeal the statute or to reenact the Senior Citizens' Grants Act or to repeal the repealing statute (House Bill No. 74.) On the contrary, both the people and the legislature have accepted the decision without further attempt at either a modification or reenactment. Now

we are asked to re-examine the question and to overrule and reverse the decision therein made.

The Senior Citizens' Grants Act, repealed by House Bill No. 74, required for its administration and execution large appropriations of money and required necessary legislative provisions for raising revenue to meet such obligations. To now reverse that decision and hold invalid the act, which has been in force for more than two years, would disorganize the fiscal system of the state and probably necessitate convening an extraordinary session of the legislature. Furthermore, it is very significant, that the issue involved in the repealing act was not carried into the general election in 1944 following the promulgation of the Luker decision.

The general election held in 1944 afforded a ready opportunity for the people to exercise their electoral privileges in the selection of members of the legislature and likewise, and at the same time, to invoke the referendum or initiative, either one or both.

A very kindred legal question was before this court in the Alturas County division cases, reported in *Blaine County v. Heard*, 5 Ida. 6, 45 P. 890, and *People v. Alturas County*, 6 Ida. 418, 55 P. 1067, 44 L.R.A. 122, and which involved the constitutionality of the act of March 5, 1895, creating Blaine county. In the course of the opinion in the latter case, the court said:

"Was the act of March 5, 1895, creating Blaine county, prohibited by the provisions of article 18 of the constitution? Was said act passed in the manner prescribed by the provisions of article 3 of the constitution?

"The first of these questions was answered by this court in the decision in the case of *Blaine Co. v. Heard*, August 4, 1896, reported in 5 Ida. 6, 45 P. 890, where the court, speaking through its present chief justice, said: 'Notwithstanding this case, in all its salient points, has been heretofore presented and considered by us, in view of its importance we have again gone carefully over the case as presented in the briefs and arguments of the counsel, and are convinced that the contention of the appellant cannot be sustained, and that the acts of the legislative assembly of Idaho (Sess. Laws 1895, pp. 32, 170) estab-

lishing the counties of Blaine and Lincoln are valid and constitutional laws.' It will thus be seen that more than two years ago this court held said act to be constitutional. Since then the people of these two counties doubtless relying on the judgment of both the legislative and judicial branches of government, have acted on the theory that said act was valid; and the former decision of this court, having been acted upon by the people, who have adjusted the business matters of the county, funded old indebtedness, and created new, should not be disturbed at this late day. No good would be accomplished by overruling that decision, but much evil and confusion would result therefrom. Whether that decision was right or not, public policy and sound legal principles demand that we now adhere to it, and regard that question as a sealed book, which is no longer open to public scrutiny. . . The legislature has recognized the validity of the act in question in at least four different bills which have been introduced and apparently enacted into law since its passage. At the regular elections in 1896 and 1898, men have been elected by the people of Blaine county to represent 'Blaine county' in both houses of our state legislature, and the senators and representatives so elected have been received and recognized in the legislature as legal representatives of Blaine county. In fact, Blaine county, through its senators and representatives, has participated in conducting and carrying on the state government itself, and has been permitted to do so by the state government, through its different branches, without question."

The same principle of constitutional construction was involved in *Walling v. Bown,* 9 Ida. 740, 76 P. 318, 2 Ann. Cas. 720 (Aff. 204 U.S. 320, 51 L. ed. 503, 27 S. Ct. 292), and this court cited with approval the rule applied in the case of *People v. Alturas County,* supra, saying:

"When the beneficial results to be obtained by a departure from the construction and interpretation placed by this court upon a constitutional or statutory provision will not greatly exceed the disastrous and evil effects likely to flow therefrom, the court will decline to reopen those questions where rights and interests have become settled under such decisions, and they have been acquiesced in by the legislature, and the people for any reasonable period of time."

In *In re Speer*, 53 Ida. 293, 300, 23 P. (2d) 239, 88 A.L.R. 1086, 1089, this court said:

"It is the duty of the legislature to make the laws, and, in enacting sec. 18-102, it functioned within the scope of that duty. It was the duty of the court to interpret that statute, and it did so in the Lockman case. *In re Lockman*, 18 Ida. 465, 110 P. 253, 46 L.R.A. (N.S.) 759. If the law, so interpreted, is to be changed *that is a legislative, not a judicial, function.*" (Emphasis ours).

■ The generally prevailing rule of stare decisis is well stated by the supreme court of Montana, in *State ex rel Kain v. Fischl*, 94 Mont. 92, 20 P. (2d) 1057, at 1059:

"The general rule is that when the highest court of a state has construed a constitutional provision, the rule of stare decisis—that a question once deliberately examined and decided should be considered as settled—applies, unless it is demonstrably made to appear that the construction manifestly is wrong. Decisions construing the Constitution should be followed, in the absence of cogent reasons to the contrary, as it is of the utmost importance that our organic law be of certain meaning and fixed in interpretation. (7 R.C.L. 1002; Cooley's Constitutional Limitations, (8th Ed.) 123.")

The same principle was applied by the supreme court of the United States in *Seibert v. U.S.*, 129 U.S. 192, 9 Sup. Ct. 271, 32 L. ed. 645, wherein the court said:

"The facts of this case are similar to those in *Seibert v. Lewis*, before the court at its October Term, 1886, 122 U.S. 284, and it is admitted by the counsel for the plaintiff in error that the decision there, if adhered to, will control here. He, however, asks us to reconsider our rulings and reverse our former judgment. We see no reason to justify such reconsideration and change of position. The very elaborate argument of counsel is but a representation of the reasons originally offered against the decision in that and analogous cases. *Seibert v. Lewis* was very carefully and elaborately considered, and to the doctrines there announced we adhere. Upon its authority *the judgment of the court below must be affirmed;* and it is so ordered."

For illuminating discussions on the same subject and to the same effect, see 14 Am. Juris., p. 287, sec. 66; *State*

v. *Mellenberger*, 163 Ore. 233, 95 P. (2d) 709, 128 A.L.R. 1506, 1519; *McGill v. Town of Lumberton*, 218 N.C. 586, 11 S. E. (2d) 876; *Brooks v. Clark County*, 297 Ky. 549, 180 S.W. (2d) 300, 302; *Monongahela St. Ry. Co. v. Philadelphia Co.*, 350 Pa. 603, 39 A. (2d) 909, 916; *Pappa v. Woolworth Co.* (Dela.), 33 A. (2d) 310, 312; *Semanchuck v. Fifth Av., etc.*, 290 N.Y. 412, 49 N.E. (2d) 507, 509; *Noonan v. City of Portland*, 161 Ore. 213, 88 P. (2d) 808, 818; *Bowman v. Union High Sch. Dist., etc.*, 173 Wash. 299, 22 P. (2d) 991, 992.

■ The rule of stare decisis (to stand by decided principle) is not to be confused with res adjudicata or law of the case. It has been well stated that, "The doctrine of stare decisis, . . . is based upon the legal principle or rule involved and not upon the judgment which results therefrom. In this particular stare decisis differs from res judicata, which is based upon the judgment." (*Horne v. Moody* (Tex. Civ. App.), 146 S.W. (2d) 505, 509; 14 Am. Juris., pp. 283-285, secs. 60-64; Black's Law Dictionary, (3d ed.), Stare Decisis, p. 1651.) Here we are called upon to consider the rule of precedent, known as *stare decisis*.

■ A judicial construction by the court of last resort of this state, on a provision of the constitution dealing with the legislative and fiscal powers and duties of state officers, after once acted upon, should not be altered by subsequent decision except for the gravest reasons. Neither should the question be re-opened for further consideration after such a lapse of time as to enable the lawmaking power to further legislate on the subject.

It has been suggested by appellant, that the holding made in the Luker case should not be controlling in this case, for the asserted reason, that this case was filed in the district court prior to the commencement of the action in the Luker case. There is nothing in the record to show when the *original* complaint was filed in this case but the record does disclose that the *amended* complaint, on which the appellant relied, was not filed until July 14th, two and one-half months after the filing of the opinion in the Luker case. However, the date of the commencement of the case is immaterial, in so far as the application of the rule of prior decision (stare decisis) is concerned. It is worthy

of note, however, that the case was not ready, under the rules of this court, to set down for hearing here until January 25, 1945. The chronological history of the case is as follows:

(1) July 14, 1943, amended complaint filed;

(2) July 17, 1943, demurrers to complaint filed;

(3) January 14, 1944, demurrers sustained by court;

(4) May 9, 1944, judgment of dismissal entered;

(5) May 9, 1944, appeal from district court to supreme court;

(6) May 27, clerk's certificate on perfection of appeal filed;

(7) June 1, 1944, extension (60 days) for appellant's brief;

(8) July 14, 1944, extension for appellant's brief— Aug. 20, 1944;

(9) Aug. 19, 1944, extension for appellant's brief— Sept. 18, 1944;

(10) Sept. 14, 1944, extension for appellant's brief— Oct. 14, 1944;

(11) Oct. 14, 1944, appellant's brief filed in supreme court;

(12) Nov. 1, 1944, extension to file respondent's brief —Dec. 1, 1944;

(13) Nov. 29, 1944, extension to file respondent's brief—Jan. 1, 1945;

(14) Jan. 2, 1945, extension to file respondent's brief —Jan. 12, 1945;

(15) Jan. 12, 1945, extension to file respondent's brief —Jan. 17, 1945;

(16) Jan. 15, 1945, respondent's brief filed;

(17) Jan. 25, 1945, last day for appellant's reply brief;

(18) *Above extensions for briefs granted on stipulation of counsel;*

(19)   Jan. 25, 1945, first day cause ready for hearing in supreme court;

(20)   April 19, 1945, oral argument in supreme court.

██   Notwithstanding the fact, that we consider our decision in case of *Luker v. Curtis,* supra, as controlling and decisive on this appeal without further examination, we have, nevertheless, again considered the constitutional question urged and find no reason for altering or changing in any respect our ruling in the Luker case.   Although we did not go into an exhaustive written analysis of all the cases cited in the Luker case and those that have been cited on the present appeal, they do not present any issue that was not fully considered by us before promulgating the opinion in the Luker case.

We conclude that the judgment appealed from should be affirmed, and it is so ordered.

Budge and Givens, JJ., and Glennon, D. J., concur.

Holden, J., dissents.

Miller, J., deeming himself disqualified to sit in this case, District Judge Glennon was called to participate in his stead.